UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANGELA STALEY, as Administrator of the Estate
of DENNIS FERGUSON, Deceased,
                                        Plaintiff,

v.                                                          1:08-CV-0305
                                                            (GTS/RFT)
JAN MIKA, sued individually and in his capacity
as a City of Albany Police Officer; "JOHN DOE",
sued Individually and in his capacity as a Captain
of the City of Albany Police Department; and CITY
OF ALBANY,
                                        Defendants.

_____

APPEARANCES:                                 OF COUNSEL:

HARDING & MOORE, ESQS.                       JAMES P. HARDING, ESQ.
  Counsel for Plaintiff
80-59 Lefferts Boulevard
Kew Gardens, New York 11415

HON. JOHN J. REILLY                          ANDREW H. WOOD, ESQ.
  Corporation Counsel for the City of Albany  Assistant Corporation Counsel
  Counsel for Defendants
City Hall
Albany, New York 12207

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court in this civil rights action filed by Angela Staley, as

Administrator of the Estate of Dennis Ferguson, deceased ("Plaintiff"), is a motion for summary

judgment filed by Jan Mika, John Doe, and the City of Albany ("Defendants").  (Dkt. No. 29,

Attach. 2.)  For the reasons set forth below, Defendants' motion is granted in part and denied in

part.

# I.    RELEVANT BACKGROUND

## A.    Plaintiff's Claims

Generally, liberally construed, Plaintiff's Amended Complaint alleges that, on January 11, 2007, in Albany, New York, Dennis Ferguson's civil rights were violated when he was stopped and taken into physical custody by Defendant Mika, an Albany Police Officer.  (*See generally* Dkt. No. 17 [Plf.'s Am. Compl.].)  More specifically, Plaintiff alleges that Ferguson was wrongfully arrested by Defendant Mika and that, during his arrest, he was subject to excessive force by Defendant Mika, who caused him to suffer physical, psychological and emotional injuries.  (*Id*.)  Based on these factual allegations, Plaintiff's Amended Complaint asserts the following claims, pursuant to 42 U.S.C. § 1983: (1) a claim of excessive force against Defendant Mika; (2) a claim of false arrest against Defendant Mika; (3) a claim of false imprisonment against Defendant Mika;[1] and (4) a claim of municipal liability against the City of Albany.[2]  (*Id*.)  Familiarity with the remaining factual allegations supporting these claims in Plaintiff's Amended Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties.  (*Id*.)

## B.    Undisputed Material Facts

In her opposition to Defendants' motion for summary judgment, Plaintiff failed to submit a Statement of Material Facts in accordance with Local Rule 7.1 of the Local Rules of Practice for this Court (which requires, *inter alia*, numbered paragraphs detailing the material facts as to

---

[1]    The Court construes Plaintiff's claim of "unlawful search and seizure of his person" to be a claim for false imprisonment.

[2]    As discussed in more detail below in Part III.C. of this Decision and Order, the Court notes that municipal liability cannot result from a theory of respondeat superior.

which it is contended that there exists a genuine issue, with "specific citation[s] to the record where the factual issue arises"). (Dkt. No. 36.) Instead, Plaintiff submitted a Rule 7.1 Statement that (1) fails to admit or deny any of Defendants' factual assertions, and (2) makes a stream of conclusory statements, unsupported by any record citations. Ordinarily, all material facts set forth in a movant's Rule 7.1 Statement are deemed admitted unless specifically controverted by the opposing party. *See* N.D.N.Y. L.R. 7.1(a)(3); *Prive v. Johnson,* 04-CV-1024, 2010 WL 3338810, at *2 (N.D.N.Y. Aug. 23, 2010) (Suddaby, J.) [collecting cases]. However, the Court need not, and will not, turn a blind eye to any fact that is clearly in dispute. *Burgess v. County of Rensselaer,* 03-CV-0652, 2006 WL 3729750, at *1 (N.D.N.Y. Dec. 18, 2006) (McCurn, J.). As a result, only the properly supported facts contained in Defendant's Local Rule 7.1 Statement, which are not clearly in dispute, shall be accepted as true for purposes of the pending motion. With these points of law in mind, the following is a general summary of material facts. (Dkt. No. 29, Attach. 1 [Defs.' Rule 7.1 Statement].)

On January 11, 2007, between 4:30 p.m. and 5:30 p.m.,[3] Defendant Mika was traveling by himself in a marked Albany Police Department vehicle, wearing an Albany Police Department uniform, when he saw Ferguson interact with the driver of a car in front of 1 Lincoln Square in the City of Albany.[4] After the car pulled away, Defendant Mika called out to

---

[3]     (*Compare* Dkt. No. 33, Attach. 3, at 13 [Ferguson's 50-h hearing] *with* Dkt. No. 29, Attach. 1, at ¶ 7.)

[4]     In his 50-h hearing, Ferguson testified that he was getting out of a car to go to Mike's on Morton. Ferguson further testified that the driver of the car, Adam Asheber, let him out of the car and then drove away to park. In his deposition, Defendant Mika testified that 1 Lincoln Square is known to be "narcotics prone" and he saw Ferguson standing in the street, leaning into the passenger window of a car, blocking traffic. Defendant Mika further testified that, after the driver and Ferguson shook hands and interacted, Ferguson removed his upper body

3

Ferguson,[5] and Ferguson stopped to speak with Defendant Mika.  After a verbal exchange

between Defendant Mika and Ferguson, a scuffle took place.[6]  As a result of the scuffle,

Ferguson could not walk.  Defendant Mika called for backup and Ferguson was transported by

ambulance to Albany Medical Center.[7]  Ferguson was arrested for obstruction of governmental

administration and criminal possession of a controlled substance.

     Familiarity with the remaining undisputed material facts of this action, as well as the

disputed material facts, as set forth in the parties' Rule 7.1 Statement and Rule 7.1 Response, is

assumed in this Decision and Order, which (again) is intended primarily for review by the

parties.  (*Id.*)

---

from the passenger side window, and the vehicle drove away.  (*Compare* Dkt. No. 33, Attach. 3, at 13 [Ferguson's 50-h hearing] *and* Dkt. No. 33, Attach. 4, at 1 [Ferguson's 50-h hearing] *with* Dkt. No. 29, Attach. 1, at ¶ 6-10.)

    [5]     In his 50-h hearing, Ferguson testified that Defendant Mika called out to him, "Slim," and stated, "I want to check you."  In his deposition, Defendant Mika testified that he called to Ferguson to come over and talk to him.  (*Compare* Dkt. No. 33, Attach. 4, at 1-3 [Ferguson's 50-h hearing] with Dkt. No. 29, Attach. 1, at ¶ 13.)

    [6]     In his 50-h hearing, Ferguson testified that Defendant Mika "checked" him and found nothing.  Ferguson testified that Defendant Mika then told him to open his mouth, which he did, and that Defendant Mika, despite finding nothing in his mouth, then grabbed his hood and flipped him over, causing him to land on his left side.  In his deposition, Defendant Mika testified that he believed Ferguson was involved in a drug transaction when he called out to Ferguson, and that Ferguson placed his hands in his pocket and walked away from Defendant Mika when Defendant Mika called him, causing concern that Ferguson may have been in possession of some type of weapon.  Defendant Mika further testified that he attempted to engage Ferguson in a conversation, but Ferguson was mumbling and unable to speak, which led him to believe Ferguson had contraband in his mouth.  Defendant Mika testified that, as a result of this belief, he pointed his flashlight toward Ferguson's mouth, but Ferguson pushed him away. Defendant Mika testified that he then grabbed hold of Ferguson's sweatshirt and pulled Ferguson forward in an attempt to prevent him from swallowing any contraband that may have been in his mouth.  Defendant Mika further testified that, after taking hold of Ferguson's sweatshirt, Ferguson fell to the ground.  (*Compare* Dkt. No. 33, Attach. 4, at 3, 9 [Ferguson's 50-h hearing] *with* Dkt. No. 29, Attach. 1, at ¶ 16-18, 20-27.)

    [7]     At Albany Medical Center, it was determined that Ferguson suffered from a fracture to his left femur.

###### C.      Defendants' Motion

Generally, in support of their motion for summary judgment, Defendants argue as follows: (1) Plaintiff's claim of excessive force should be dismissed because the amount of force used by Defendant Mika was reasonable under the circumstances; (2) Plaintiff's claim for false arrest should be dismissed because the arrest was based on probable cause; (3) Defendant Mika is protected from liability as a matter of law by the doctrine of qualified immunity; and (4) Plaintiff's municipal liability claim against the City of Albany should be dismissed because she has failed to adduce any admissible evidence from which a rational factfinder could conclude that Ferguson was deprived of his constitutional rights as a result of a custom or policy implemented by Defendant City of Albany.  (*See generally* Dkt. No. 29, Attach. 2 [Defs.' Memo. of Law].)

In her response to Defendants' motion for summary judgment, Plaintiff argues as follows: (1) she has adduced admissible record evidence from which a rational factfinder could conclude that Ferguson was subjected to excessive force; (2) Defendant Mika's stop, search, and seizure/arrest of Ferguson was without reasonable suspicion or probable cause; (3) Defendant Mika is not entitled to qualified immunity because his actions in the stop, search, and seizure/arrest of Ferguson were not objectively reasonable; and (4) because Defendant Mika was acting within the scope of his employment as a police officer with the City of Albany during the time in question, the City of Albany is liable under a theory of respondeat superior.  (*See generally* Dkt. No. 38 [Plf.'s Response Memo. of Law].)

## II.   RELEVANT LEGAL STANDARDS

### A.   Legal Standard Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the moving party has met this initial responsibility, the nonmoving party must come forward with "specific facts showing a genuine issue [of material fact] for trial." Fed. R. Civ. P. 56(e)(2).

As for the *materiality* requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248 [citation omitted].

As for the *genuineness* requirement, a dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party." *Id*.  As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a *genuine* issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation

omitted; emphasis added]; *see also* Fed. R. Civ. P. 56(e)(2).[8]  Similarly, inadmissible hearsay is insufficient to create a *genuine* issue of fact, "absent a showing that admissible evidence will be available at trial."  *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) [citations omitted].  Moreover, "an affidavit . . . that, by omission or addition, contradicts the affiant's previous deposition testimony" is insufficient to create a *genuine* issue of fact.  *Hayes v. New York City Dept. of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) [citations omitted].

Finally, as this Court has previously observed, "It is well established that issues of credibility are *almost never* to be resolved by a court on a motion for summary judgment."  *Cruz v. Church*, 05-CV-1067, 2008 WL 4891165, at *4 & n.6 (N.D.N.Y. Nov. 10, 2008) (Suddaby, J.) [emphasis in original; collecting cases].  However, "there is a *narrow exception* to this well-established rule."  *Cruz*, 2008 WL 4891165, at *4 [citation omitted].  In *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005), the Second Circuit explained that this narrow exception is for testimony by a non-movant that possesses the following two characteristics: (1) it constitutes almost the exclusive basis for a disputed issue of fact in the case (or, expressed differently, it is largely unsubstantiated by any other direct evidence); and (2) it is so lacking in credibility (because the testimony is incomplete and/or replete with inconsistencies and improbabilities) that, even after drawing all inferences in the light most favorable to the non-movant, no reasonable jury could find for the non-movant.  *Cruz*, 2008 WL 4891165, at *4 & n.7 [collecting cases].  "Again, it must be remembered that the circumstances giving rise to this exception are rare.'"  *Id*. & n.7 [collecting cases].

---

[8]      As the Supreme Court has famously explained, "[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986) [citations omitted].

B.      **Legal Standards Governing Plaintiff's Claims**

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for review by the parties.  (Dkt. No. 29, Attach. 2 [Defs.' Memo. of Law]; Dkt. No. 38 [Plf.'s Response Memo. of Law].)

III.    **ANALYSIS**

A.      **Plaintiff's Claim of Excessive Force**

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of Plaintiff's excessive force claim because (1) she has failed to adduce admissible record evidence from which a rational factfinder could conclude that Ferguson was subjected to excessive force during his arrest, and (2) Defendant Mika is protected from liability as a matter of law by the doctrine of qualified immunity.

Based on the current record, the Court rejects Defendants' first argument.  A "[p]olice officer's application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'"  *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 [1989]).  Although "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment," *Graham*, 490 U.S. at 396 (internal quotation marks and citation omitted), the Second Circuit has permitted a plaintiff's claim to survive summary judgment where record evidence was adduced reasonably establishing that, during the course of an arrest, "a police officer twisted her arm, 'yanked' her, and threw her up against a

car, causing only bruising." *Maxwell*, 380 F.3d at 108 (citing *Robison v. Via*, 821 F.2d 913, 924-25 [2d Cir. 1987]).

In his General Municipal Law § 50-h hearing ("50-h hearing"), Ferguson testified as follows: (1) on January 11, 2007, he was dropped off in front of 1 Lincoln Square by his friend so that he could go to a store called "Mike's" on nearby Morton Avenue to get some items for his girlfriend and; (2) after exiting his friend's vehicle, he heard a vehicle pull up and someone say to him, "Slim"; (3) he turned around and saw Defendant Mika, who exited his vehicle, came up onto the sidewalk, and said, "How'd you get out so quick?"; (4) Ferguson smiled, laughed and replied, "I did 22 days";[9] (5) Defendant Mika then said, "[P]ut your hands up.  Let me check you."; (6) Ferguson put his hands up as far as he could;[10] (7) Defendant Mika searched Ferguson's person, his wallet, his front pocket and his hood; (8) after searching Ferguson and not finding anything, Defendant Mika told him to open his mouth, which he did; (9) when Defendant Mika found nothing in Ferguson's mouth, Defendant Mika grabbed the raised hood of his sweatshirt and flipped him over;[11] (10) Ferguson fell to the ground, landing on his left hip; (11) Defendant Mika then hit Ferguson on the back of the head with his right hand; (12) Ferguson said to Defendant Mika, "[M]y leg is broken.  We don't have to keep going through this"; (13)

---

[9]       In October 2006, Ferguson was arrested by Defendant Mika and a State Trooper for trespassing at 3 Lincoln Square.  (Dkt. No. 33, Attach. 4, at 13-14 [Ferguson's 50-h hearing].)  Ferguson plead guilty and was sentenced to up to 30 days.  (*Id.*)  After 22 days, Ferguson was released.  (*Id.*)

[10]      In his 50-h hearing, Ferguson testified that he suffered from chronic myelogenous leukemia and had no muscle in his upper body.  (Dkt. No. 33, Attach. 3, at 10; Dkt. No. 34, Attach. 4, at 17 [Ferguson's 50-h hearing].)

[11]      Ferguson testified that he had his hood on, and that Defendant Mika grabbed the front of the hood with his right hand.  (Dkt. No. 33, Attach. 4, at 9-10 [Ferguson's 50-h hearing].)

Defendant Mika looked back, saw Ferguson's leg at an awkward angle, and made a comment that indicated he was frustrated;[12] (14) Defendant Mika then placed handcuffs on Ferguson and called for back-up; (15) two police cars and the fire department arrived; (16) Ferguson was placed on a stretcher, and subsequently transported to Albany Medical Center; and (17) he underwent surgery to correct a broken femur.  (Dkt. Nos. 33, 34.)

Based on this testimony, the Court concludes that Plaintiff has adduced sufficient evidence from which a rational factfinder could conclude that Defendant Mika used excessive force when he arrested Ferguson.[13]

Furthermore, the Court rejects Defendants' second argument, i.e., his argument that Defendant Mika is protected from liability as a matter of law by the doctrine of qualified immunity.  "Under federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act."  *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) [internal quotations and other citations omitted].

Here, there is no rational dispute as to whether the right to be free from the use of excessive force was "clearly established" at the time Defendant Mika arrested Ferguson.  *See,*

---

[12]      In his 50-h hearing, Ferguson testified that Defendant Mika stated, "oh shit" when he looked back and saw Ferguson's leg.  (Dkt. No. 33, Attach. 4, at 12 [Ferguson's 50-h hearing].)

[13]      The Court notes that, because Ferguson's testimony is not incomplete or internally contradictory, grounds do not exist to disregard it as incredible (which is an extreme remedy reserved for narrow circumstances).  *See Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) (setting forth applicable standard for when to disregard testimony on motion for summary judgment).

10

*e.g., Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002) (noting that it is "well established that

the use of excessive force in the course of an arrest is constitutionally prohibited").  Therefore,

Plaintiff's Section 1983 excessive force claim turns on whether it was objectively reasonable for

Defendant Mika to use the amount of force that he used.

With regard to that issue, the Second Circuit has made clear that, "[w]here the

circumstances are in dispute, and contrasting accounts present factual issues as to the degree of

force actually employed and its reasonableness, a defendant is not entitled to judgment as a

matter of law on a defense of qualified immunity." *Mickle*, 297 F.3d at 122 (internal citations

and quotation marks omitted).  Based on the conflict between the account of events presented by

Plaintiff (described above) and the account of events presented by Defendant Mika (described

below, in Part I.B. of this Decision and Order), the Court concludes it is simply not possible to

determine whether Defendant Mika reasonably believed that his force was not excessive.

*Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir. 1999).[14]

For these reasons, Plaintiff's excessive force claim survives Defendants' motion for

summary judgment.

### B.      Plaintiff's Claims of False Arrest and False Imprisonment

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of

Plaintiff's false arrest and false imprisonment claims because (1) Plaintiff has failed to adduce

admissible record evidence from which a rational factfinder could conclude that Ferguson was

---

[14]      *See also Robison*, 821 F.2d at 924 ("[T]he parties have provided conflicting
accounts as to [who] initiated the use of force, how much force was used by each, and whether
[the arrestee] was reaching toward [a weapon].  Resolution of credibility conflicts and the choice
between these conflicting versions are matters for the jury and [should not be] decided by the
district court on summary judgment.").

falsely arrested and falsely imprisoned, and (2) Defendant Mika is protected from liability as a matter of law by the doctrine of qualified immunity.

Based on the current record, the Court rejects Defendants' first argument. "To establish a claim for false arrest or false imprisonment under 42 U.S.C. § 1983, a plaintiff must show that 'the defendant intentionally confined him without his consent and without justification.'" *McMillan v. City of New York*, 03-CV-0626, 2009 WL 261478, at *7 (E.D.N.Y. Feb. 4, 2009) (quoting, *inter alia*, *Escalera v. Lunn*, 361 F.3d 737, 743 [2d Cir. 2004]). "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under § 1983." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted); *see also Broughton v. State*, 37 N.Y.2d 451, 456-57 (N.Y. 1975) (noting that a plaintiff will prevail on a claim of false arrest under New York law if he can show that the arrest was not privileged, i.e., not based on probable cause).[15] "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852. In addition, "a claim for false arrest turns only on whether probable cause existed to arrest a defendant[;] . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006). "Stated differently, when faced with a claim for false arrest," this Court must "focus on the validity of the arrest and not on the validity of each charge." *Jaegly*, 439 F.3d at 154.

---

[15] "A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Jenkins*, 478 F.3d at 84 (citing *Weyant*, 101 F.3d at 852).

Here, Ferguson was arrested for obstructing governmental administration and criminal possession of a controlled substance, seventh degree.  Under New York Penal Law § 195.05, "A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference . . . ."  Under New York Penal Law § 220.03, "A person is guilty of criminal possession of a controlled substance in the seventh degree when he knowingly and unlawfully possesses a controlled substance."

For the sake of brevity, the Court will not repeat Ferguson's account of events, as summarized above in Part I.A. of this Decision and Order.  The Court will note only that the account of events offered by Ferguson is in stark contrast to the account of events offered by Defendant Mika.

Specifically, in his deposition, Defendant Mika testified as follows: (1) on January 11, 2007, while sitting in his patrol vehicle, he observed a man standing in the street, and leaning into the passenger window of a sedan that was blocking traffic; (2) he observed the man and the driver of the vehicle interact and shake hands inside the vehicle; (3) then he observed the man pull his head out of the passenger side window and straighten up, at which point he identified the man as Ferguson; (4) after the vehicle drove away, Defendant Mika stopped and exited his patrol vehicle in an effort to speak to Ferguson;[16] (5) after seeing his patrol vehicle, Ferguson began to walk in the opposite direction; (6) Defendant Mika called out to Ferguson to come over and talk

_____

[16]        Defendant Mika testified that he recognized the individual standing in the street as Ferguson based on his involvement in Ferguson's arrest for criminal trespass on October 24, 2006.  (Dkt. No. 29, Attach. 9, at 22, 33.)

to him; (7) however, Ferguson continued to walk away; (8) moreover, while Ferguson was walking away, it appeared to Defendant Mika that Ferguson had in his hand some type of narcotic;[17] (9) again, Defendant Mika called out for Ferguson to come over and talk to him;[18] (10) however, Ferguson put his hand in his pocket and continued to walk away; (11) Defendant Mika became concerned that Ferguson may have had some type of weapon; (12) when Ferguson finally stopped, Defendant Mika attempted to engage Ferguson in a conversation; (13) Ferguson began mumbling and was unable to speak to him; (14) Defendant Mika called for back-up after it appeared to him that Ferguson had contraband in his mouth; (15) because Ferguson could not speak clearly, Defendant Mika tried to shine his flashlight into Ferguson's mouth; (16) however, as Defendant Mika did so, Ferguson pushed him away; (17) after being pushed by Ferguson, Defendant Mika took hold of Ferguson's sweatshirt and pulled him forward in an attempt to prevent him from swallowing any contraband; (18) after Defendant Mika took hold of Ferguson's sweatshirt, Ferguson fell to the ground; (19) after Ferguson fell to the ground, Defendant Mika perceived Ferguson to be in pain and called for EMS to come to the scene; and (20) Defendant Mika then secured Ferguson by placing handcuffs on him.  (Dkt. No. 29, Attach. 1. [Defs.' Rule 7.1 Statement] [citing Dkt. No. 29, Attach. 9].)

Under the circumstances, it is impossible to determine whether Defendant Mika had probable cause to search and/or arrest Ferguson because several material facts are still in dispute. For example, among the conflicting portions of testimony are the following: (1) Defendant Mika

---

[17]    Defendant Mika testified that, although he was not aware of whether Plaintiff had any prior drug and/or felony convictions, Plaintiff was in an area considered to be "narcotics-prone."  (Dkt. No. 29, Attach. 9, at 28, 37.)

[18]    Defendant Mika testified that he wanted to talk to Ferguson because he believed that Ferguson was involved in a drug transaction.  (Dkt. No. 29, Attach. 9, at 28-29.)

14

testified that Ferguson stood in the street, leaning into the passenger side window of a car, while Ferguson testified that as soon as he exited the vehicle Defendant Mika pulled up; (2) Defendant Mika testified that Ferguson walked away from him when he repeatedly called out to Ferguson to stop, while Ferguson testified that he complied with Defendant Mika's first request to speak with him; (3) Defendant Mika testified that Ferguson put his hands in his pockets before approaching Defendant Mika, while Ferguson testified that he held his hands up in the air; (4) Defendant Mika testified that he attempted to shine a flashlight in Ferguson's mouth, while Ferguson testified that Defendant Mika never attempted to shine a flashlight in his mouth; (5) Defendant Mika testified that he grabbed Ferguson's sweatshirt because he had been pushed away by Ferguson, and that Ferguson fell to the ground because their legs became entangled, while Ferguson testified that Defendant Mika grabbed his sweatshirt because Defendant Mika found nothing in his mouth, and that he fell to the ground because Defendant Mika flipped him over; and (6) Defendant Mika testified that Ferguson had crack cocaine in his mouth, which he swallowed, while Ferguson testified that he had gum in his mouth.

As a result, this Court cannot find, as a matter of law, that Defendant Mika had probable cause to arrest Ferguson for obstructing governmental administration and/or criminal possession of a controlled substance. *See Potenza v. Gonzales*, 07-CV-0225, 2010 WL 2680236, at *2-6 (N.D.N.Y. July 1, 2010) (Mordue, C.J.) (holding the court could not conclude as a matter of law that an officer had probable cause to arrest an individual where there were numerous disputed facts); *Searless v. Pompillo*, 652 F. Supp. 2d 432, 439 (S.D.N.Y. 2009) (same); *Esmont v. City of New York*, 371 F. Supp.2d 202, 210 (E.D.N.Y. 2005) ("Probable cause to arrest for a violation of § 195.05 may be predicated on, amongst other things, obstructing a lawful search. Resisting an

illegal search does not, however, constitute a violation of the statute.").[19]

Furthermore, based on the current record, the Court rejects Defendants' second argument i.e., his argument that Defendant Mika is protected from liability as a matter of law by the doctrine of qualified immunity. As explained above in Part I.A. of this Decision and Order, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act. Here, there is no rational dispute as to whether the right to be free from arrest without probable cause was "clearly established" at the time of Ferguson's arrest. Therefore, Plaintiff's Section 1983 false arrest claim turns on whether the probable cause determination of Defendant Mika was objectively reasonable.

"An officer's determination is objectively reasonable if there was 'arguable' probable cause at the time of arrest–that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'" *Jenkins*, 478 F.3d at 87 [internal quotations and other citations omitted]. "[U]nder both New York and federal law, summary judgment dismissing a plaintiff's . . . claim is [not] appropriate if . . . on the undisputed facts the officer

---

[19]    The Court recognizes that "[t]he lack of probable cause to stop and search does not vitiate the probable cause to arrest, because (among other reasons) the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant." *Townes v. City of New York*, 176 F.3d 138, 149 (2d Cir. 1999). Thus, even if a search is unlawful, if, during that search, an officer acquires probable cause to believe that a crime has been or is being committed, a § 1983 claimant's false arrest claim must fail. *Townes*, 176 F.3d at 149; *see also Davenport v. County of Suffolk*, 99-CV-3088, 2007 WL 608125, at *5 (E.D.N.Y. Feb 23, 2007). However, in this case, Defendant Mika did not recover drugs from Ferguson's person prior to arresting him, and what Ferguson had in his mouth remains in dispute. Thus, it cannot be said, as a matter of law, that Defendant Mika had probable cause to arrest Ferguson after checking (or attempting to check) the inside of his mouth.

would be unreasonable in concluding probable cause existed, or if the officer's reasonableness depends on material issues of fact . . . ." *Jenkins*, 478 F.3d at 88; *see also Zellner v. Summerlin*, 494 F.3d 344, 377 (2d Cir. 2007) (if there is no probable cause to believe that the plaintiff broke the law, a subsequent arrest is unreasonable).

As observed by the Southern District of New York, "courts have upheld the constitutionality of searches of a suspect's mouth when the suspect has been properly detained under the Fourth Amendment." *Singleton v. City of Newburgh*, 1 F. Supp.2d 306, 313 (S.D.N.Y. 1998) (noting that "[t]he pertinent inquiry is whether the intrusion was reasonable under the circumstances") (collecting cases). As a result, Defendant Mika is entitled to qualified immunity as a matter of law only if it was objectively reasonable for him to conclude that he had probable cause to search Ferguson's mouth under the circumstances.

Here, despite the fact that Defendant Mika testified that various indicia of criminal activity existed before he searched Plaintiff's mouth, it is also undisputed that (1) Defendant Mika did not know the identity of the driver of the vehicle with whom Ferguson was interacting, (2) Defendant Mika did not see money exchanged between Ferguson and the driver of the vehicle, and (3) Defendant Mika was not aware of Ferguson's drug-related criminal history when he stopped Ferguson.[20] In addition, the following facts remain in dispute: (1) whether Ferguson continued to walk away from Defendant Mika after Defendant Mika repeatedly called for him, or whether Ferguson approached Defendant Mika immediately after being summoned; (2) whether Defendant Ferguson searched Ferguson's person before asking Ferguson to open his mouth;[21] (3)

---

[20]        (Dkt. No. 29, Attach. 9, at 37.)

[21]        (*Compare* Dkt. No. 29, Attach. 9, at 50-51 *with* Dkt. No. 29, Attach. 11, at 16-18, 24-26.)

whether Ferguson allowed Defendant Mika to search his mouth;[22] (4) whether Ferguson pushed

Defendant Mika before being arrested; and (5) whether Defendant Mika saw crack cocaine or

merely gum in Ferguson's mouth.  Based on this record evidence, even assuming that Defendant

Mika had the right to stop Ferguson and inquire about Ferguson's exchange with the driver of a

vehicle, the Court is unable to conclude, as a matter of law, that it was objectively reasonable for

Defendant Mika to attempt to search Ferguson's mouth.

For these reasons, Plaintiff's false arrest and false imprisonment claims survive

Defendants' motion for summary judgment.

### C.    Plaintiff's Municipal Liability Claim

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of

Plaintiff's municipal liability claim because Plaintiff has failed to adduce any admissible

evidence from which a rational factfinder could conclude that Ferguson was deprived of his

constitutional rights as a result of a custom or policy implemented by Defendant City of Albany.

Based on the current record, the Court accepts Defendants' argument.  Plaintiff adduces

no record evidence that Defendant Mika's actions were carried out in execution of a

governmental policy or custom.[23]  Instead, in support of her municipal liability claim, Plaintiff

relies solely on the theory of respondeat superior.[24]  However, municipal liability "cannot result

---

[22]    (*Compare* Dkt. No. 29, Attach. 9, at 52-54 *with* Dkt. No. 29, Attach. 11, at 17.)

[23]    The closest the Plaintiff comes is her contention  that the City of Albany has an informal policy of "checking" people.  (Dkt. No. 29, Attach. 13, ¶ 23.)

[24]    In fact, Plaintiff has acknowledges in her memorandum of law in opposition to Defendants' motion for summary judgment that "[t]here were no facts developed which would indicate that the City of Albany has a custom or policy, formal or informal of violating the civil rights of its citizens which would impose *Monell*-type liability."  (Dkt. No. 38.)

from a theory of respondeat superior; rather, it can be imposed only if the acts in question were carried out in 'execution of a government's policy or custom.'" *Thomas v. Roach*, 165 F.3d 137, 145 (2d Cir. 1999) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 [1978]).

For these reasons, Plaintiff's claim against the City of Albany is dismissed.

### D.   Plaintiff's False Arrest Claim Against Defendant John Doe

On March 14, 2008, Ferguson filed his original Complaint in this action, in which he named the following as Defendants: Jan Mika, individually and in his capacity as a City of Albany Police Officer; "John Doe," individually and in his capacity as a Captain of the City of Albany Police Department; and the City of Albany.[25]  (Dkt. No. 1.)  On March 31, 2008, Ferguson's attorney filed notice with the Court regarding the death of his client.  (Dkt. No. 4.) On November 5, 2008, the Court received notice that Angela Staley would be acting as the administrator of the estate of Ferguson.  (Dkt. No. 16.)  On December 17, 2008, Plaintiff filed her Amended Complaint, which asserts claims against the same three Defendants. (Dkt. No. 17.) Nonetheless, to date, Plaintiff has made no effort to identify Defendant "John Doe."  Moreover, the deadline to file a Second Amended Complaint has long since passed, having expired on October 23, 2009.  (Dkt. No. 22 [Uniform Pretrial Scheduling Order].)

Rule 41 of the Federal Rules of Civil Procedure permits the Court to *sua sponte* dismiss an action for failure to prosecute.  Fed. R. Civ. P. 41(b).[26]  The Second Circuit has held that it is

---

[25]      The Court notes that, on April 2, 2008, Ferguson properly served Defendant "John Doe" at his actual place of business.  (Dkt. No. 7.)

[26]      Fed. R. Civ. P. 41(b) (providing, in pertinent part, that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it"); *Saylor v. Bastedo*, 623 F.2d 230, 238-239 (2d Cir. 1980) (recognizing that, under the language of Fed. R. Civ. P. 41[b], a district court retains the inherent power to dismiss a plaintiff's complaint, *sua sponte*, for failure to prosecute) [citations omitted];

within the trial judge's sound discretion to dismiss for want of prosecution.[27]  Furthermore, the

Second Circuit has identified five factors that it considers when reviewing a district court's order

to dismiss an action for failure to prosecute under Fed. R. Civ. P. 41(b):

> [1] the duration of the plaintiff's failures, [2] whether plaintiff had
> received notice that further delays would result in dismissal, [3]
> whether the defendant is likely to be prejudiced by further delay, [4]
> whether the district judge has taken care to strike the balance between
> alleviating court calendar congestion and protecting a party's right to
> due process and a fair chance to be heard and [5] whether the judge
> has adequately assessed the efficacy of lesser sanctions.[28]

As a general rule, no single one of these five factors is dispositive.[29]

Here, the Court finds that these five factors weigh in favor of dismissal.  Specifically, the

Court finds that the duration of Plaintiff's failure is some eleven months, i.e., from the expiration

of the motion-to-amend deadline on October 23, 2009.[30]  The Court finds that Plaintiff–who is

---

accord, *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962), *Theilmann v. Rutland Hospital, Inc.*,
455 F.2d 853, 855 (2d Cir. 1972); *see also* N.D.N.Y. L.R. 41.2(a) ("Whenever it appears that the
plaintiff has failed to prosecute an action or proceeding diligently, the assigned judge *shall* order
it dismissed.") [emphasis added].

[27]    *See Merker v. Rice*, 649 F.2d 171, 173 (2d Cir. 1981).

[28]    *See Shannon v. GE Co.*, 186 F.3d 186, 193 (2d Cir. 1999) (affirming Fed. R. Civ.
P. 41[b] dismissal of plaintiff's claims by U.S. District Court for Northern District of New York
based on plaintiff's failure to prosecute the action) [citation and internal quotation marks
omitted]; *see also Drake v. Norden Sys.*, 375 F.3d 248, 254 (2d Cir. 2004) (articulating same
standard in slightly different form); *accord, Ruzsa v. Rubenstein & Sendy Attys at Law*, No. 07-
0089, 2008 WL 706693, at *1 (2d Cir. March 17, 2008).

[29]    *See Nita v. Conn. Dep't of Env. Protection*, 16 F.3d 482 (2d Cir. 1994).

[30]    *See Ruzsa v. Rubenstein & Sendy Attys at Law*, No. 07-0089, 2008 WL 706693, at
*1 (2d Cir. March 17, 2008) (dismissing action, in part because of plaintiff's seven-month delay
during prosecution of action); N.D.N.Y. L.R. 41.2(a) ("In the absence of any order by the
assigned judge or magistrate judge setting any date for any pre-trial proceeding or for trial, the
Plaintiff's failure to take action for four (4) months shall be presumptive evidence of lack of
prosecution.").

represented by counsel–has received adequate notice that this failure to name and/or serve the John Doe Defendant would result in dismissal.[31]  The Court finds that the John Doe Defendant, who has not ever been served or afforded the opportunity to conduct discovery in this matter, is likely to be prejudiced by a further delay.[32]  The Court finds that the need to alleviate congestion on the Court's docket outweighs Plaintiff's right to receive a further chance to be heard with regard to her claim against the John Doe Defendant in this matter.[33]  Finally, the Court has considered all less-drastic sanctions and finds them to be inadequate or inappropriate under the circumstances.

The Court notes that judges of this District have repeatedly reached the same conclusion in analogous cases.  *See, e.g., Brown v. Middaugh*, 41 F. Supp.2d 172, 195 (N.D.N.Y. 1999) (Munson, J.) (dismissing plaintiff's claim against John Doe defendants for failure to prosecute where plaintiff's case was pending for over two years, plaintiff had not identified the "John Doe" defendants, and the time period to amend his complaint had passed) (citing N.D.N.Y. L.R. 41.2[a]); *Clayton v. City of Kingston*, 44 F. Supp. 2d 177, 182-83 (N.D.N.Y. 1999) (McAvoy, C.J.) (dismissing plaintiff's claim against "John Doe" defendants for failure to prosecute where plaintiff's case was pending for over two years, plaintiff had not identified the "John Doe" defendants, and the time period to amend his complaint had passed).

---

[31]     This notice has come from the following: (1) Fed. R. Civ. P. 41(b); (2) Local Rule 41.2(a) of the Local Rules of Practice for this Court; (3) Fed. R. Civ. P. 4(m); (4) Local Rule 4.1(a),(b) of the Local Rules of Practice for this Court; and (5) Local Rule 5.1(f) of the Local Rules of Practice for this Court.

[32]     *See*, *e.g.*, *Geordiadis v. First Boston Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y. 1996) ("The passage of time always threatens difficulty as memories fade.  Given the age of this case, that problem probably is severe already.  The additional delay that plaintiff has caused here can only make matters worse.").

[33]     The Court notes that it is cases like this one that delay the resolution of other cases, and that increase the Second Circuit's average time for the disposition of civil rights.

In the alternative, the Court finds that Plaintiff's claim against the John Doe Defendant should be dismissed on the ground that Plaintiff has violated Fed. R. Civ. P. 4(m), because she has not offered "good cause" for her failure to enable the Marshals Service to effect service on that Defendant.[34]  The Court notes that, under Fed. R. Civ. P. 4(m), the Court need not issue such an order only upon motion of defense counsel but may do so *sua sponte*.  *See* Fed. R. Civ. 4(m) ("[T]he Court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time.").

For these reasons, the Court *sua sponte* dismisses Plaintiff's claims against Defendant John Doe.[35]

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 29) is **GRANTED** with regard to the following claims:

1.      Plaintiff's municipal liability claim against the City of Albany; and

2.      Plaintiff's false arrest claim against John Doe; and it is further

**ORDERED** that Defendants' motion for summary judgment is **DENIED** with regard to the following claims:

---

[34]      *See Waldo v. Goord*, 97-CV-1385, 1998 WL 713809, at *5 (N.D.N.Y. Oct. 1, 1998) (Kahn, J.) (dismissing a claim under Fed. R. Civ. 4[m] where pro se plaintiff failed to serve John Doe defendants during the year that elapsed between filing of complaint and issuance of order of dismissal by court); *Thomas v. Keane*, 99-CV-4302, 2001 WL 410095, at * 1, 5 (S.D.N.Y. April 23, 2001) (dismissing claim under Fed. R. Civ. 4[m] where pro se plaintiff failed to serve John Doe defendants  during the year that elapsed between filing of complaint and issuance of order of dismissal by court).

[35]      The Court notes that Plaintiff's claims against Defendant John Doe are dismissed for the alternative reason that Plaintiff has failed to offer any evidence that Defendant John Doe was involved in Plaintiff's arrest.

1.      Plaintiff's excessive force claim against Defendant Mika; and

2.      Plaintiff's false arrest and false imprisonment claims against Defendant Mika; and it is further

**ORDERED** that the City of Albany and John Doe are **<u>DISMISSED</u>** as Defendants in this action; and it is further

**ORDERED** that counsel are directed to appear on **NOVEMBER 4, 2010 at 2:00 p.m.** in chambers for a pretrial conference, at which counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time. Plaintiff is further directed to forward a written settlement demand to defendants no later than October 15, 2010, and the parties are directed to engage in meaningful settlement negotiations prior to the 11/4/10 conference.

Dated: September 29, 2010
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge